**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DONALD J. COON,

                    Plaintiff,

    v.                                                   1:16-cv-291

MATTHEW ORTON, and KAREN                         (TJM/DJS)
BELL,

                    Defendants.

---

**Thomas J. McAvoy, Sr. U.S.D.J.**

# DECISION & ORDER

Before the Court is Defendants' motion for summary judgment in this case involving alleged police misconduct. See dkt. # 77. The parties have briefed the issues and the Court will consider the issues without oral argument.

## I.    BACKGROUND[1]

This case concerns claims by the Plaintiff that he suffered mistreatment by police in the Village of Cambridge, New York. Plaintiff alleges that the police misconduct from which he suffered arose in connection to marital disputes with his then-wife, Riza Coon,

---

[1]Defendants filed the Statement of Material Facts with citations to the record required by Local Rule 7.1(3) and Plaintiff filed a response. See L.R. 7.1(3). Plaintiff's response does not provide citations to the record, as required by the rule. Because Plaintiff proceeds *pro se*, the Court will read Plaintiff's filing generously, and make all possible inferences in his favor. The Court will cite to the Defendants' Statement for facts which are uncontested and note the extent and source of Plaintiff's disagreement to other facts.

1

that occurred around the time of the incidents in question. Plaintiff accuses Riza Coon of using and manipulating police to procure his arrest. Plaintiff alleges that Riza Coon violated immigration laws and engaged in a fraudulent marriage to come to the United Stats from the Philippines, and then used similarly fraudulent techniques to harm him in her new country.

On August 3, 2015, members of the Village of Cambridge Police Department arrested Plaintiff at his residence in that Village. Defendants' Statement of Material Facts ("Defendants' Statement"), dkt. # 77-4, at ¶ 10. Plaintiff's property contained a modular home which had been burned in a fire in Spring 2015. Id. at ¶ 11. The home became uninhabitable. Id. Plaintiff lived in a storage shed on the property from Spring 2015 to October 2015. Id. at ¶ 12. The shed lacked electricity and running water. Id. Plaintiff contends that the shed contained his legal and medical papers, as well as his personal belongings. Plaintiff's Response to Defendant's Statement ("Plaintiff's Response"), dkt. # 81-4, at ¶ 17. Police charged Plaintiff with criminal contempt for allegedly violating an Order of Protection in favor of Riza Coon. Defendants' Statement at ¶ 13. Plaintiff contends he was the victim of a false arrest because federal law required him to buy groceries for Riza Coon, whatever the Order of Protection said. Plaintiff's Response at ¶ 17.

Plaintiff appeared before Judge Sica in Cambridge Village Court for arraignment on August 3, 2015. Defendants' Statement at ¶ 14. Plaintiff contends that he told Judge Sica that he was expecting a MedCab to pick him up at his residence to take him to a medical appointment that afternoon. Id. According to Defendant, Judge Sica directed George

2

Bell,[2] then serving as Police Chief in Cambridge, to go to Plaintiff's home and see if a MedCab did arrive. Id. Plaintiff believes that Judge Sica wanted to release him to allow him to attend his medical appointment, but after speaking with the Washington County District Attorney, Judge Sica decided to keep Plaintiff in custody and remanded him to the County Sheriff. Id.

Plaintiff contends that Bell returned from his property while Plaintiff was still at court. Id. at ¶ 15. Bell advised Judge Sica that the Med Cab had not arrived at Plaintiff's residence. Id. According to Plaintiff, however, Bell was not idle while on Plaintiff's property; he alleges that while he was at the property, Bell went into Plaintiff's shed, destroyed photographs, emptied out bankers boxes and threw the contents on the floor, and generally "ransacked" the shed. Id. at ¶ 16. Plaintiff also alleges that Bell left the doors to the shed open, permitting others to continue the destruction of his property. Id. Plaintiff claims that he had trail cameras set up to face the shed, and that the cameras took pictures of Bell destroying his things. Id. at ¶ 17. In response to Defendants' statement, Plaintiff emphasizes the allegedly illegal conduct of Riza Coon, his supposed false arrest by Bell and his officers, and contends that while he was in custody he suffered the theft of his documents, "three cameras," all the pictures on those cameras, two toolboxes, and a chainsaw. Plaintiff's Response at ¶ 17. He asserts that "it isn't far fetched a police dep[artment] with [a] long history of officers being arrested for things from burglary to forcible rape could take stuff." Id. In an affidavit accompanying his response

---

[2]George Bell was named as a Defendant in Plaintiff's Complaint. He has since died, and his wife Karen Bell as a been substituted as a the representative of his estate. See dkt. # 71.

3

to Defendants' motion, Plaintiff asserts that after his "illegal" August 3, 2015 arrest, Bell "left" his "home's doors open for 4 weeks[.]" Plaintiff's Affidavit, dkt. # 81-2, at ¶ 16. Plaintiff further alleges that an unnamed "National Grid Employee" was confronted in Plaintiff's yard by Bell on August 3, 2015. Id. at ¶ 17. The Greenwich Barracks of the New York State Police, Plaintiff claims, investigated this matter. Id. Plaintiff found a New York license plate in his yard "in front of [the] building where the door's latches were torn off the twin doors to steal the items." Id. at ¶ 18.

At his deposition, Defendants asked Plaintiff about any evidence he had to support his claim that George Bell entered his property and destroyed personal belongings. Defendants' Statement at ¶ 18. Plaintiff responded: "I don't have it now." Id. Plaintiff further claimed that he had such evidence, including photographs, and had kept it stored in the shed on his property. Id. at ¶ 19. When he went to the shed, however, Plaintiff found that many items–including the photographs in question–had been stolen or destroyed. Id. Plaintiff further testified that he did not possess any of the damaged or torn photographs or other destroyed property any longer. Id. at ¶ 20. Plaintiff admitted that he had asked George Bell whether he went into Plaintiff's shed and destroyed property on August 3, 2015. Id. at ¶ 21. Bell responded, "Why would I do that?" Id. Plaintiff claimed that Bell had laughed when Plaintiff accused him of this conduct. See Plaintiff's Deposition, Exhibit D to Defendants' Motion, dkt. # 77-9, at 65. When asked if he "took that as a denial that [Bell] did that," Plaintiff responded "Yeah, yeah, basically." Id. Plaintiff also admitted that he was aware that Riza Coon, his sister, and perhaps others had vandalized the modular home and shed on his property in 2015. Id. at ¶ 22. Decedent George Bell denied unlawfully entering or vandalizing Plaintiff's property in

4

answering Plaintiff's Amended Complaint. Id. at ¶ 23. Plaintiff does not cite to any evidence in responding to these facts, but instead repeats accusations that Bell had harassed him and reported him to state officials to allege that Plaintiff had failed in his obligation to support Riza Coon. See Plaintiff's Response.

On September 7, 2015, Riza Coon reported to the Cambridge Police Department that Plaintiff had visited her residence, violating an Order of Protection. Id. at ¶ 24. She claimed Plaintiff had left a suicide note on her door. Id. Based on this information, Defendant Matthew Orton, a Cambridge Police Officer, believed that Plaintiff had violated the Order of Protection and posed a threat to himself. Id. Orton thought Plaintiff might be in need of assistance. Id. He drove to Plaintiff's residence to perform a welfare check. Id. at ¶ 26.

When he arrived at the residence, Orton observed Plaintiff sitting in the driver's seat of a vehicle. Id. at ¶ 27. Orton claims that he noticed the vehicle's engine was running and that two garden hoses had been attached to the exhaust pipes. Id. Those hoses had been placed in the passenger's side rear window of the vehicle. Id. Orton called dispatch seeking to have Emergency Medical Services ("EMS") dispatched ot the scence. Id. at ¶ 28. He cut the hoses that were attached to the exhaust. Id. at ¶ 28. He tried to enter the vehicle, but found the doors locked. Id. Orton then forced entry into the plaintiff's vehicle, breaking the front passenger window. Id. at ¶ 29. Once inside the car, Orton turned off the engine, opened all the doors, and checked on the Plaintiff. Id. at ¶ 30. Plaintiff was breathing and had a pulse, but he was unresponsive to verbal commands. Id.

New York State Police EMS personnel arrived on the seen in approximately fifteen minutes. Id. at ¶ 31. Until they arrived, Plaintiff remained seated in the driver's seat while

5

Orton waited for the EMS personnel to appear.  Id.  Orton claims that while they were waiting, Plaintiff told Orton that he had intended to commit suicide and that he had gone to Riza Coon's residence and left the note on her door.  Id. at ¶ 32.  EMS then transported Plaintiff from the scene.  Id. at ¶ 33.  Plaintiff's suicide attempt left him in the custody of the New York State Police pursuant to an order brought under New York State Mental Hygiene Law § 941.

Plaintiff denies this version of the events.  In the affidavit submitted in opposition to Defendants' motion, Plaintiff alleges that he had been out celebrating his birthday from 3 p.m. until midnight on September 7, 2015.  Plaintiff's Affidavit at ¶ 4.  He returned to his property at around midnight.  Id. at ¶ 5.  He drank a bottle of vodka and "then set to go to sleep."  Id. at ¶ 6.  Plaintiff claims that he wasn't awakened by Orton smashing a window to get the car open, since the car doors were unlocked.  Id. at ¶ 7.  Orton, he claims, hit him in the face.  Id. at ¶ 8.  He awoke two days later, facing $25,000 in medical bills.  Id. at ¶ 9.

Plaintiff offered a somewhat similar version of events during his deposition.  See dkt. # 77-9.  He testified that he drank a pint of vodka he had stored on his property when he arrived home from the movies.  Id. at 82.  He probably finished the bottle in five minutes.  Id. at 83.  Plaintiff drank to "[g]et drunk" and forget about his family problems.  Id. at 84.  The next thing he remembered was "[b]eing rousted" by Orton.  Id.  Plaintiff denied leaving a suicide note for Riza Coon at her home that evening.  Id. at 85.  He also denied the authenticity of a note produced in discovery and purportedly left at Riza's Coon's apartment.  Id. at 86.  Plaintiff accused Riza Coon of making false statements to police to harm him.  Id. at 87.  She allegedly used an older note Plaintiff gave her, added

6

handwritten comments to it herself or having her boyfriend do so, and produced it to officials as the communication allegedly left on her door. Id. at 91-94, 97.

Plaintiff testified that when he first awoke in his car on the September 7, 2015, he recalled someone saying something. Id. at 101. He could not remember what that person said. Id. The doors were not locked at that point. Id. Plaintiff remembered "go[ing] out to pee." Id. The car was on and he was listening to the radio when he fell asleep. Id. at 102. Plaintiff recalled awakening to the sound of the window smashing and "g[etting] hit with something." Id. Though Plaintiff had earlier claimed he had been struck with a shotgun or billy club, he testified that he was unsure what object "they used." Id. The door then "flung open" and Plaintiff "got hit . . . [i]n the face somewhere, it knocked me out." Id. at 103. He assumed the officer who hit him used a shotgun or a billy club "[b]ecause that's what you see on TV, when the officers are assaulting somebody[.]" Id. at 104. He wasn't really sure what he was struck with. Id. Plaintiff also assumed that Officer Orton hit him, since "[h]e was the only one there." Id. at 105. Plaintiff also testified that he "[knew] that from the EMS and from one of the state troopers. I talked to both of them about the case months ago and they were very sure of what happened." Id. at 105. He also knew that he had suffered a serious injury because he had to pay a cleaning fee for the blood he spilled in the car. Id. at 105-106.[3] Plaintiff remembered that he had an injury

---

[3]The deposition contains the following exchange between defense counsel and Plaintiff:
Q. So you recall the passenger window–you recall glass breaking, you recall the door being flung open and you recall being hit in the face, but you don't recall and didn't witness who hit you in the face or what they hit you with; correct?
A. No.
Q. All right. No, meaning no, you don't recall that?

7

to his face after the incident, but had no clear memory of how he got it.  Id. at 106-108.  Plaintiff could not recall any cuts, though he assumed the blood in his vehicle was his.  Id. at 108.

Plaintiff could not remember any New York State Police officers or EMS members at the scene.  Defendants' Statement at ¶ 43.  Plaintiff testified that he could not recall any details of the scene after drinking the vodka and falling asleep in his car.  Id. at ¶ 44.  When he reviewed photographic evidence of hoses connected to the exhaust pipes of his car which led to the rear passenger window, however, Plaintiff admitted that it was possible that he had tried to kill himself that night.  Id.  He testified, however, that "I don't know . . . I don't remember."  Plaintiff's Deposition at 110.

On the night in question, members of the Cambridge Valley Rescue Squad arrived at the scene and gave aid to the Plaintiff.  Defendants' Statement at ¶ 49.  The Rescue Squad's records of the incident indicate that when the Squad arrived Plaintiff was sitting in the vehicle's driver's seat and Officer Orton and the New York State Police were on the scene.  Id. at ¶ 50.  EMS records list Plaintiff's "chief complaint" as "possible CO [carbon monoxide] poisoning/attempt to harm self."  Id. at ¶ 51.  The records further state that Plaintiff had consumed a fifth of vodka and taken an unknown amount of pills.  Id. at ¶ 52.

---

A. No, I don't recall.
Q. You didn't see that?
A. I didn't see that.
Q. All right.  Do you recall being injured at the time that you were injured or is that something you discovered later?
A. Later.
Q. So at the time of this incident, you don't recall being injured in the face, you just later determined that you were; correct?
A. Yeah, I had bruised–black and blues.

Plaintiff's Deposition at 106-107.

EMS records indicate that Plaintiff planned to harm himself because he had a tumor and only a 2% chance of recovery.  Id.  The records further note "no sign of trauma."  Id. at ¶ 53.  The records detailed "no injury" in the section for describing "Injury Details."  Id. at ¶ 54.  The records do not mention any facial injuries and list no complaint from Plaintiff that he had been struck in the face during his rescue.  Id. at ¶ 55.

Plaintiff, proceeding *pro se*, filed a Complaint in this matter on March 10, 2016.  See dkt. # 1.  After the Court accepted and adopted Magistrate Judge Daniel J. Stewart's recommendation that the Court dismiss Plaintiff's Complaint with leave to re-plead, the Plaintiff filed an Amended Complaint.  See dkt. #s 8, 11, 12.  Magistrate Judge Stewart gave that Amended Complaint an initial review as well.  Plaintiff's Amended Complaint raised a number of claims regarding alleged false arrests, malicious prosecutions, and unlawful seizures by George Bell.  Plaintiff also attempted to raise a number of other claims related to these arrests and alleged mistreatment by Bell and others while he was in jail. Magistrate Judge Stewart recommended that all of those claims against all those Defendants be dismissed.  See dkt. # 13.  He recommended, however, that the Court permit illegal search claims against George Bell and excessive force claims to go forward.  Id.  The Court adopted the Report-Recommendation, and the case moved into discovery.  See dkt. # 16.

During discovery, Magistrate Judge Stewart permitted Plaintiff to amend the caption of the Complaint and name Police Officer Matthew Orton as a Defendant.  See dkt. #44.  The Court later allowed the substitution of Karen Bell, for George Bell, who died.  The claims in the case that remained were an excessive force claim against Defendant Orton and an illegal search claim against Defendant Bell.  Defendants now seek summary

9

judgment on each of those claims.

## II. LEGAL STANDARD

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'"

McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## III. ANALYSIS

Defendants seek summary judgment on each remaining claim, which the Court will address in turn.

### A. Unlawful Search Claim

Defendants first seek judgment on Plaintiff's unlawful search claim, raised against George Bell. Plaintiff alleges that Bell violated his Fourth Amendment right to be free of unreasonable search and seizure when Bell went to his property while Plaintiff was under arrest on August 3, 2015, broke into the shed where he was living, and stole and/or destroyed various items. "The Fourth Amendment to the Constitution provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause[.]'" United States v. Delva, 858 F.3d 135, 147 (2d Cir. 2017) (quoting U.S. Const. amend. IV). "'It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Id. at 148. "Warrantless searches inside a home are presumptively unreasonable." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998). "'Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful[.]'" United States v. Howard, 489 F.3d 484, 497 (2d Cir. 2007) (quoting United States v. Ramirez, 523 U.S. 65, 71 (1998)).

Defendants do not argue that Plaintiff could not prevail on a Fourth Amendment

11

claim if he could prove that George Bell intentionally broke into his home and destroyed property. Instead, they contend that no evidence exists by which a jury could find that Bell entered Plaintiff's home and destroyed his things. He has no evidence proving Bell was on the property, no evidence that any property was actually destroyed, and Plaintiff admitted at his deposition that his sister and Riza Coon unlawfully entered the property and vandalized the remains of the modular home and the shed in which he was living. The only evidence Plaintiff points to, Defendants argue, "amounts to nothing more than unsubstantiated speculation on plaintiff's part." No reasonable juror, they argue, could find for the Plaintiff based on his statements.[4]

As a general matter, "wholly conclusory and inconsistent allegations" are insufficient to withstand a motion for summary judgment. Salahuddin v. Jones, 992 F.2d 447, 449 (2d

---

[4]In relevant part, Defendants argue that:

In his Amended Complaint, plaintiff alleged that he had evidence to support his claim in the form of trail camera photographs depicting George Bell entering the shed and destroying plaintiff's personal property. In his deposition, plaintiff testified that he has no such evidence. He testified that in response to defendant's discovery demand that he produce such evidence, he went to his shed and found that the photographs were no longer there.

Plaintiff further testified at his deposition that, in addition to no having any evidence depicting George Bell on his property destroying his personal belongings, he also had no evidence to support his claim that any of his belongings were destroyed, as alleged. He testified that he does not possess the torn photographs or any of the damaged belongings. He further testified that he has no photos of the damaged property alleged to have been so damaged by George Bell.

Finally, plaintiff testified at his own deposition that a number of other individuals, including his sister and his now ex-wife, Riza Coon, unlawfully entered upon his property, vandalized his modular home, and destroyed his shed and property within the shed, on numerous occasions throughout 2015.

Defendants' Brief in Support of their Motion for Summary Judgment, dkt. # 77-5, at 4.

Cir. 1999). Moreover, "a party may not 'rely on mere speculation or conjecture as to the true nature of facts to overcome a motion for summary judgment.'" Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (quoting Knight v. U.s. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)). The Court disagrees with the Defendant, however, that Plaintiff's opposition to their motion in this respect relies solely on conclusory allegations with no support in the record in this case. Making all inferences in Plaintiff's favor and recognizing his status as a *pro se* litigant, the Court finds that evidence exists by which a reasonable juror could find in his favor on this question.

The question here is whether a reasonable juror could find that George Bell went to Plaintiff's property on August 3, 2015 and without any legal justification broke in and destroyed property. As explained above, evidence exists that Bell went to the property on the day in question. Plaintiff alleges that he–at least at one point–had evidence that George Bell entered his property and destroyed or stole his possessions. Plaintiff claims that he had trail cameras set up on his property on that date. He also contends that those cameras produced pictures of George Bell engaging in the activities about which he complains. He described those pictures in his testimony. His story goes on to allege that later events led to the destruction or theft of those photographs. Defendants are correct that Plaintiff cannot produce the photographs that he alleged he saw which proved his claim about Bell. They point to no rule of evidence, however, which would prevent Plaintiff from testifying as to what he saw on those photographs or from describing that material he says was destroyed or stolen while he was away from the property. A jury may very well find Plaintiff incredible and reject all of his testimony, but questions of credibility are for the jury on a motion for summary judgment. Moreover, a jury also could find that George Bell

13

*did not* deny that he had broken into and damaged Plaintiff's property; Plaintiff testified that Bell answered his allegations with a question, not necessarily a strict denial. A jury will be required to answer these questions. The motion will be denied in this respect.

### B. Excessive Force Claim

Defendants also seek summary judgment on Plaintiff's Fourth Amendment excessive force claim. Excessive force claims brought pursuant to the Fourth Amendment "'are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.'" Shamir v. City of New York, 804 F.3d 553, 556 (2d Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). Using "excessive force renders a seizure of the person unreasonable and for that reason violates the Fourth Amendment." Id. To decide whether the force was reasonable, a court should pay "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Soares v. Connecticut, 8 F.3d 917, 921 (2d Cir. 1993) (quoting Graham, 490 U.S. at 396). This standard focuses on "'a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015) (quoting Graham, 490 U.S. at 397). "A court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." Id. at 103.

This claim concerns the incident on September 7, 2015. Plaintiff contends that Officer Orton attacked him without cause while he was sleeping in his car, struck him in

14

the face with an object that was probably a shotgun or a billy club, and caused him injury. Orton contends that he never struck Plaintiff with any object, but instead acted to rescue Plaintiff, who had earlier expressed an intent to commit suicide, and who was asleep behind the wheel of a running vehicle that had hoses attached to its tail pipes that were being used to pump deadly gas into the passenger compartment.

Defendants acknowledge that these two widely varying stories would appear to create a question of fact. They also appear to agree that Plaintiff's version, if believed, would provide a basis for a jury to find a Fourth Amendment violation. They argue, however, that the version Plaintiff offers is so contradictory and incomplete–and thus so unbelievable–that summary judgment is warranted under these circumstances.

Defendants point to Second Circuit case law to support this claim. These cases find in most summary judgment contexts "'[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury[.]'" Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)). Still, the non-moving party has some obligation to produce evidence: "a nonmoving party 'must offer some hard evidence showing that its version of events is not wholly fanciful.'" Id. at 554 (quoting D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998)). Courts are "not to weigh the credibility of the parties at the summary judgment stage," but "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of it contradictory and incomplete, it will be impossible for a district court to determine whether the 'jury could reasonably find for the plaintiff,' and thus whether there are any 'genuine issues of material fact, without making some assessment of the plaintiff's account." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252

15

(1986)).  Under those circumstances, summary judgment is appropriate for the moving party "where (1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that 'no reasonable person could believe [plaintiff's] testimony.'"  Id. at 555 (quoting Jeffreys v. Rossi, 272 F.Supp.2d 463, 477 (S.D.N.Y. 2003)).  The exception applies only when the non-moving party's testimony is "contradictory or rife with inconsistencies such that it was facially implausible."  Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 726 (2d Cir. 2010).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

Defendants argue that this case fits that exception.  First, they contend that Plaintiff offers no evidence of excessive force except his own claims.  Second, Plaintiff's testimony on this matter was contradictory and inconsistent.  He testified to uncertainty about the item allegedly used to strike him in the face, and about the identity of the officer who allegedly did so.  Plaintiff also admitted that any blow to his face may have been caused by the glass Orton smashed to get into the car.   Third, Defendants argue that all of the objective evidence in this case supports only their version of events: that Orton smashed the car window to rescue Plaintiff in the face of his suicide attempt.  No evidence in any report indicates any injury to Plaintiff's face on that evening, and no complaints from Plaintiff about such injury exist.

If Defendants' version of events were to be believed, a jury could only find that

16

Orton did not use excessive force. Orton had reason to believe from Riza Coon's report and the suicide note she provided that Plaintiff planned to kill himself. Though Plaintiff blames Riza Coon for manufacturing a false crisis, nothing in the record indicates that Orton should have known to ignore her claims. When he came upon the car, he saw evidence that Plaintiff had acted on his supposed plan. He saw hoses leading from the tail pipes into the parked and running car, creating a lethal environment. Finding the doors locked, Orton acted quickly to get Plaintiff out of the car and prevent his death. The force he used to rescue the Plaintiff–smashing the car window–was reasonable under the circumstances. Medical records do not indicate any injuries as a result of this rescue. If that version of the facts were undisputed, no reasonable juror could conclude that the force Orton used was excessive.

The question here is whether Plaintiff's contrasting version of the facts is one which the Court must permit a jury to consider. As explained above, Plaintiff's version of events is that he passed out in his car after drinking a considerable amount of vodka in a short time. He had not locked the car. He was awoken by Orton smashing his vehicle's window, after which Orton hit him in the face and he passed out. He woke up later in the hospital. He knew that Orton hit him because he later asked an EMS member and a State Trooper what had happened, and they told him. If Plaintiff could prove to a jury that Orton hit him in the face for no good reason, Plaintiff could prevail on his excessive force claim. Plaintiff might also prevail on that claim if he could prove that no reasonable officer in Orton's situation would use force to open the car, and that Orton's unreasonable use of force injured him.

The Court finds that Plaintiff's version of the events is internally inconsistent and

17

contradictory, and that the rules articulated above for rejecting a Plaintiff's statements in considering summary judgment apply.  At some points, Plaintiff remembers getting hit in the face by specific objects, but at others admits he merely speculates as to who hit him, when, and with what object.  He admits that he has no memory of certain actions, and relies on conjecture to conclude that Orton engaged in certain activities.  Plaintiff's account is inconsistent as to how much he remembers of the events in question, and how he remembers that Orton struck him.  At some points in his account, he relies on his memory, at others conjecture, and others he points to statements from third parties who were allegedly on the scene.  As to these third parties, Plaintiff does not identify them, and their statements would not be admissible in any case, since they are out-of-court statements by non-parties offered for the truth of the matter asserted–that Orton struck Plaintiff.  See FED. R. EVID. 801(c)(defining hearsay as an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement"; FED. R. EVID. 802 (hearsay inadmissible unless permitted by an exception in the Rules of Evidence or Federal law).  His account is also inconsistent about the injuries he suffered.  Plaintiff claimed the injuries he suffered led to bleeding, but he could not recall seeing any cuts or injuries.

Plaintiff offers no admissible evidence beyond these contradictory and inconsistent statements to counter Defendants' version.  Instead, the version Plaintiff offers is "blatantly contradicted by the record." Scott, 550 U.S. at 380.  Plaintiff contends that he was not attempting to commit suicide, and that he passed out simply from drinking vodka.  The photographic record from the scene, however, shows a vehicle rigged for carbon monoxide poisoning.  See Exh. B to Defendants' Motion, dkt. # 77-7.  That blatant contradiction is important, because it explains Orton's attempt to enter the car.  The police

18

reports also support this version of events. See id. The medical record also blatantly contradicts Plaintiff's explanation of his injuries. See id. Plaintiff claims that he suffered bruises and other injuries to his face as a result of Orton's alleged attack, but the medical record indicates no injuries. The medical record only describes the side-affects of pumping exhaust fumes into the cabin of a vehicle.

Plaintiff's version of events, therefore, is supported only by his own statements, which are inconsistent, contradictory, and blatantly contradicted by the record. The Court therefore finds that "(1) nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) . . . even after drawing all inferences in the light most favorable to the plaintiff . . . 'no reasonable person could believe [plaintiff's] testimony.'" Jeffreys, 426 F.3d at 555 (quoting Jeffreys, 272 F.Supp.2d at 477). The Court will therefore grant the Defendants' motion in this respect and dismiss the case against Defendant Orton.

## IV. CONCLUSION

For the reasons stated above, the Defendants' motion for summary judgment, dkt. # 77, is hereby GRANTED in part and DENIED in part. The motion is GRANTED with respect to Plaintiff's claims against Defendant Matthew Orton for excessive force. The Clerk of Court is directed to TERMINATE Defendant Orton from this litigation. The motion is DENIED in all other respects. Trial will be scheduled on Plaintiff's remaining claim.

**IT IS SO ORDERED.**

Dated: April 22, 2019

Thomas J. McAvoy
Senior, U.S. District Judge