UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONALD J. COON,

                                  **Plaintiff,**

    vs.                                               1:16-CV-291
                                                             (MAD/DJS)

**KAREN BELL,**

                                  **Defendant.**
_____

APPEARANCES:                                   OF COUNSEL:

**FREEMAN, HOWARD LAW FIRM**        **BRIAN P. HENCHY, ESQ.**
441 East Allen Street                         **MATTHEW J. GRIESEMER, ESQ.**
P.O. Box 1328                                    **MATTHEW GALLAGHER, ESQ.**
Hudson, New York 12534
Attorneys for Plaintiff

**MURPHY BURNS LLP**                        **THOMAS K. MURPHY, ESQ.**
407 Albany Shaker Road
Loundonville, New York 12211
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    Plaintiff Donald J. Coon brought this Section 1983 action, alleging that Defendant's deceased husband, George Bell, illegally searched his home and destroyed his personal property on August 3, 2015. *See* Dkt. No. 98 at 3. The Court held a short bench trial on August 26, 2019, at which Plaintiff was the only witness to testify. *See* Transcript of Trial ("Tr.").

    Having reviewed the parties' pre-trial submissions, the trial transcript, and the exhibits, the Court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT[1]

**A. The Parties and Jurisdiction**

1. Plaintiff is a current resident of 289 Fifth Avenue, Troy, New York. *See* Tr. at 3.

2. From September 2012 until November 2015, Plaintiff lived at 103 County Route 71, Cambridge, New York (hereinafter, the "Cambridge Property"). *Id.* at 4.

3. George Bell was the Police Chief for the Villages of Cambridge, New York and Greenwich, New York. *Id.* at 8.

4. Defendant Karen Bell is the widow of George Bell. *See* Dkt. No. 71 at 1.

5. Plaintiff sued Defendant pursuant to Title 42 of the United States Code, Section 1983, alleging a violation of his Fourth Amendment right to be free from unreasonable search and seizure. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**B. Plaintiff's Home**

6. On May 5, 2015, the Cambridge Property had a fire, which destroyed the house where Plaintiff had been living. Tr. at 5.

7. After the fire, from May 6, 2015 until November 2015, Plaintiff lived in a shed on the Cambridge Property. *Id.* The shed was metal, was approximately 8 feet by 10 feet wide, and had two doors with an approximately 8-foot opening. *Id.* The shed did not have any electricity, septic, or heat. *Id.* at 6.

**C. George Bell's Visit to the Property**

---

[1] This section constitutes the Court's Findings of Fact pursuant to Federal Rule of Civil Procedure 52(a)(1). The Findings of Fact are drawn from Plaintiff's testimony at trial and the parties' trial exhibits. In general, having considered all of the evidence, the Court found that Plaintiff was not a credible witness. The Court explains its credibility assessment in full in Section III(B) below.

8. On August 3, 2015, Plaintiff was arrested at the Cambridge Property by George Bell for violating an order of protection. *Id.* at 10-11, 64-67.

9. George Bell brought Plaintiff to Judge Phillip Sica at the Cambridge Village court for his arraignment. *Id.* at 11, 73.

10. At the arraignment, Plaintiff informed Judge Sica that he had a doctor's appointment that evening and was expecting a Medicab to pick him up at his home and bring him to Adirondack Medical Center. *Id.* at 10, 12. Plaintiff testified that Medicab is a "taxi service that does only medical runs for Social Security, Medicare, and sometimes the state Medicaid." *Id.* at 13.

11. Judge Sica sent George Bell to the Cambridge Property to wait for the Medicab to arrive. *Id.* at 12-13.

12. After a couple of hours, George Bell returned to the courthouse and informed Judge Sica that he did not see a Medicab at the Cambridge Property.[2] *Id.* at 13.

13. Plaintiff did not give George Bell permission to search the shed on the Cambridge Property. *Id.* at 14.

14. Following his arraignment, Plaintiff was sent to Washington County Jail in Fort Edward, New York. *Id.* at 15.

15. Plaintiff bailed himself out of Washington County Jail early in the morning on September 4, 2015 and returned to the Cambridge Property. *Id.*

**D.     Non-Credible Testimony**

---

[2] Plaintiff also testified that George Bell informed Judge Sica that a man from National Grid came to the residence to read the meter. *Id.* at 74. Plaintiff testified that George Bell complained about the National Grid employee being an "idiot, moron . . . [b]ecause the power had been cut the day of the fire." *Id.* The Court does not find this testimony to be credible.

3

16. Plaintiff testified that George Bell refused to shut or lock the shed doors when he was arresting Plaintiff. *Id.* at 11. As discussed *infra*, this testimony is not credible.

17. Plaintiff testified that George Bell illegally entered Plaintiff's property while he was waiting for the Medicab on August 3, 2015, searched Plaintiff's shed, and destroyed Plaintiff's personal property. *Id.* at 38-40. As discussed *infra*, this testimony is not credible.

18. Plaintiff testified that when he returned to his property on September 4, 2015, he saw that the shed doors were propped open and the inside of the shed looked as though it had been ransacked. *Id.* at 77-78. As discussed *infra*, this testimony is not credible.

19. Plaintiff testified that he had hunter trail cameras set up on his property which showed George Bell illegally searching his shed and destroying his property on August 3, 2015. *Id.* at 27, 35-36. According to Plaintiff, the trail cameras were set up (1) on an oil barrel at the end of Plaintiff's home that "looked right to the shed," (2) in a small dead apple tree, and (3) on "the opposite side" to cover the land between the house "down through to the main road." *Id.* at 28-29. Plaintiff testified that the camera on the oil tank "looked right to the shed." *Id.* at 29. As discussed *infra*, this testimony is not credible.

### III. CONCLUSIONS OF LAW

**A.  Legal Standard**

"In a bench trial such as this, it is the Court's job to weigh the evidence, assess credibility, and rule on the facts as they are presented." *Bahrami v. Ketabchi*, No. 05-CV-3829, 2009 WL 513790, *9 (S.D.N.Y. Feb. 27, 2009) (quoting *Johnson-McClean Techs. v. Millennium Info. Tech. Grp.*, No. 02-CV-244, 2003 WL 192175, *8 (S.D.N.Y. Jan. 27, 2003)) (internal quotation marks and alterations omitted); *see also Mathie v. Fries*, 121 F.3d 808, 811-12 (2d Cir. 1997). "The

Court [is] 'in the best position to evaluate [each] witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says.'" *Bahrami*, 2009 WL 513790, at *9 (quoting *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir. 1996)); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (noting that "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said"). If the "evidence is equally divided . . . 'the party with the burden of proof losses.'" *Bahrami*, 2009 WL 513790, at *9 (quoting *U.S. v. Gigante*, 39 F.3d 42, 47 (2d Cir. 1994)); *see also Fulop v. Malev Hungarian Airlines*, 244 F. Supp. 2d 217, 223 (S.D.N.Y. 2003) (finding that "[t]he evidence on this issue is substantially divided and, in the Court's assessment, does not tilt sufficiently to Plaintiff's case to satisfy the preponderance standard").

B.  **Plaintiff's Credibility**

After careful assessing Plaintiff's testimony, including his demeanor, tone of voice, and other mannerisms, the Court finds that Plaintiff was not a credible witness. First, Plaintiff's testimony at trial repeatedly contradicted his sworn deposition testimony. For example, Plaintiff testified at his deposition on July 24, 2018 that he still had photographs of the May 2015 fire from one of the trail cameras, but at trial Plaintiff testified that he deleted all of the photographs "at the end of [May 2015]." *See* Tr. at 70. When asked about the inconsistency, Plaintiff explained, "[n]o, I don't remember that. I probably did not understand what you wanted." *Id.* Likewise, at trial Plaintiff testified that he viewed those photographs a few days after the fire, but in his deposition he testified that he first viewed the photographs in September 2015.[3] *Id.* at 62. Additionally, Plaintiff testified at trial that he slept on the porch of the burnt down house on

---

[3] This testimony also contradicts Plaintiff's testimony that he had deleted the photographs at the end of May 2015. *See* Tr. At 70.

September 4, 2015 (the night that he was released from jail), but Plaintiff testified at his deposition that he slept in the shed that night. *Id.* at 79-80 (testifying at trial that he "couldn't get into the shed. The stuff was piled. I misunderstood you . . . We talked a lot during the deposition"). Such inconsistencies harmed Plaintiff's credibility with the Court.

Additionally, Plaintiff's trial testimony about lost evidence that supported his version of the events from August 3, 2015 was not believable. Plaintiff claimed that his trail cameras took several pictures of George Bell on August 3, 2015, but that the photographs had been "lost due to theft." *See* Dkt. No. 98-1 at 1. The Court allowed Plaintiff to testify about the photographs after concluding that "'[the fact finder] may very well find Plaintiff incredible and reject all of his testimony, but questions of credibility are for the [the fact finder].'" *See* Dkt. No. 102 at 3 (quoting Dkt. No. 85 at 13-14). At trial, Plaintiff testified that the trail camera located on the oil tank took pictures inside the shed, which showed "George walking in and then standing by the building looking around, and then he went in the building, and then it took lots and lots and lots." *See* Tr. at 29, 38. Plaintiff testified that the images depicted George "[d]estroying stuff, ripping pictures out, throwing stuff, tipping stuff over, stomping it," including his "med bottles," "legal document," "medical records," and food from his cooler. *Id.* at 39-40; *see also id.* at 38-39 (testifying that the photographs showed George "ripping pictures off the wall . . . jumping on the box spring, which as my pictures I provided show, the box spring shattered, the frame, the wood"); *id.* at 36 (testifying that the photographs showed George in the shed, "throwing stuff out the cooler, some other odds, pair of my shoes he threw out. They landed out in the middle of the yard. It snapped the picture of them flying").

In light of the other evidence in the record, as well as the Court's assessment of Plaintiff's credibility at trial, the Court finds that Plaintiff's testimony about the contents of the photographs

6

is not credible. During his trial testimony, the Court pointed out to Plaintiff that still photographs could not show movement, but Plaintiff insisted that the photos showed George at the door of the shed "thr[owing] the cooler," so that "[t]he groceries went on the ground," and that "[s]ome other odds and ends were on the ground, and you could see the shoes." *Id.* at 36. Additionally, Plaintiff testified that he stored a memory card and some developed photographs from the trail camera in a box in the shed, and that when he returned to his shed on December 7, 2016 to retrieve the evidence, the box was gone. *Id.* at 46-48. The Court does not believe that the trail cameras, which allegedly took still photographs and were located outside the shed, could take clear photographs of someone destroying property inside the shed, especially if that destruction included small items of property such as medicine bottles and food. Moreover, Plaintiff never produced the photographs from the trail cameras or anything else to corroborate his testimony, and the Court does not find Plaintiff's testimony that the photographs were stolen to be credible.

Finally, the photographs that were presented as trial exhibits were not credible pieces of evidence. Plaintiff initially testified at trial that he took those photographs on September 4, 2015 using three disposable cameras, and that the photographs showed the shed as it looked on that day, with a damaged box spring, empty banker's box, and "other stuff dumped." *Id.* at 41-44, 54-55. Plaintiff testified that two of the disposable cameras were in the box that was stolen before December 2016, and that he found the third camera in the shed shortly before trial. *Id.* at 56. However, the photographs showed Plaintiff's family photographs on the walls of the shed, which contradicted Plaintiff's testimony that George Bell had destroyed all of his family photographs on August 3, 2015. *Id.* at 90-98. Plaintiff did not explain this apparent inconsistency, and seemed confused on the stand as to when the photographs were actually taken. *Id.* at 91-98. Accordingly,

7

the Court finds that the photographs are not reliable evidence, and Plaintiff's testimony about the photographs is not credible.

In sum, Plaintiff was not a credible witness. Plaintiff frequently changed his story, and conveniently testified that he "misunderstood" the question when his answers departed from his deposition testimony. *See, e.g.*, *id.* at 62, 80, 98. Plaintiff's overall mannerisms also showed a lack of credibility, and his testimony has not been corroborated by any other evidence. *See Bahrami*, 2009 WL 513790, at *9; *Anderson*, 470 U.S. at 575. Therefore, the Court did not rely on much of Plaintiff's testimony in determining the Findings of Fact.

## C. Fourth Amendment Claim

Plaintiff brings his Fourth Amendment claim under 42 U.S.C. § 1983, which Congress established as "a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and law' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quotation omitted). The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment also protects individuals from unnecessary destruction of their property. *See U.S. v. Ramirez*, 523 U.S. 65, 71 (1998) (holding that "[e]xcessive or unnecessary property destruction during a search may violate the Fourth Amendment . . ."). "The touchstone of . . .[the] . . . analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (internal quotation marks omitted). This reasonableness inquiry generally entails "assessing, on the one hand, the degree to which [a search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Virginia v.*

*Moore*, 553 U.S. 164, 171 (2008). Plaintiff bears the burden of proving his Fourth Amendment claim. *See Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (holding that unlike in a criminal action where the state has the burden to prove that a search was lawful, "[in civil cases] the burden is on [the plaintiff] to establish that [a] search was unlawful"); *Ruggiero v. Krzeminski*, 928 F.2d 558, 563 (2d Cir. 1991) (holding that "the ultimate risk of nonpersuasion [in an unreasonable search and seizure case] must remain squarely on the plaintiff in accordance with established principles governing civil trials").

After carefully reviewing the parties' pre-trial submissions, the trial transcript and exhibits, and the applicable law, the Court finds that Plaintiff failed to show that he was deprived of his Fourth Amendment right to be free from unreasonable searches and seizures. As discussed *supra*, Plaintiff was an unreliable witness who failed to present any credible evidence to support his allegations against George Bell. At best, the evidence shows that Plaintiff was arrested by George Bell on August 3, 2015, was placed in the custody of Washington County Jail, and was released from jail on September 4, 2015. *See* Tr. at 10-15. Thus, the Court finds that Plaintiff did not meet his burden to prove that a constitutional violation took place on August 3, 2015.

## VI. CONCLUSION

For the above-stated reasons, the Court hereby

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 11, 2019
       Albany, New York

Mae A. D'Agostino
U.S. District Judge